UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

EQUAL EMPLOYMENT §    No. SA:14–MC–445–DAE
OPPORTUNITY COMMISSION, §
§
    Applicant, §
§
vs. §
§
A'GACI, LLC, §
§
    Respondent. §

ORDER GRANTING IN PART AND DENYING IN PART EEOC'S
<u>APPLICATION TO ENFORCE ADMINISTRATIVE SUBPOENA</u>

Before the Court is an Application to Enforce Administrative

Subpoena filed by Applicant the Equal Employment Opportunity Commission

("EEOC").  (Dkt. # 1.)  Pursuant to Local Rule 7(h), the Court finds this matter

suitable for disposition without a hearing.  After reviewing the Application and the

supporting and opposing memoranda, for the reasons that follow, the Court

**GRANTS IN PART AND DENIES IN PART** the EEOC's Application to

Enforce Administrative Subpoena.  (Dkt. # 1.)

<u>BACKGROUND</u>

Respondent A'GACI, LLC ("A'GACI") is a retailer specializing in

clothing for young women.  (Dkt. # 1 at 1.)  A'GACI is headquartered in

San Antonio, Texas.  (<u>Id.</u>)  On November 6, 2009, Chris Daiss ("Daiss") filed a

1

charge of discrimination with the EEOC against A'GACI, his former employer. (Dkt. # 1, Ex 2.)  Daiss, who worked as A'GACI's Chief Operating Officer, alleged that he was terminated after complaining that A'GACI's hiring practices discriminated based on gender.  (Id.)  Specifically, the charge stated: "I believe that I have been discriminated against because I refused to support or perform discriminatory acts against other employees, reported the discrimination taking place, and in retaliation for same was terminated, in violation of Title VII of the Civil Rights Act of 1964, as amended."  (Id.)  Daiss also filed a "chronology of events" as an addendum to his charge of discrimination.  (Dkt. # 1, Ex. 3.)  In the addendum, Daiss reported his belief that A'GACI's hiring policies discriminated on the bases of race, sex, and age.  (Id.)

On December 28, 2009, the Dallas EEOC District Office served A'GACI with notice of the charge.  (Dkt. # 1 at 4.)  On January 22, 2010, A'GACI filed a response.  (Dkt. # 5, Ex. 3.)  Over the next two years, the EEOC sent A'GACI several requests for additional information and the production of documents.

On March 31, 2010, the EEOC sent its first request for additional information.  (Id.)  The EEOC requested information regarding Daiss's termination, its hiring process and policies, and any electronic system containing data on personnel activity such as hiring, work assignments, job status, and

terminations.  (Id.)  On April 15, 2010, A'GACI responded with a majority of the

information requested, but provided scant information about their automated

human resources system (Automatic Date Processing's (ADP) Human Resource

Benefits Solutions System (HRB)).  (Dkt. # 1, Ex. 6.)

On July 22, 2010, the EEOC sent its second request for additional

information.  (Dkt. # 1, Ex. 7.)  This time, the EEOC requested detailed

information regarding all job vacancies from January 1, 2008 to the present,

including information about A'GACI's selection process and the demographics

(including race, sex, and age) of the individuals selected to fill those vacancies.

(Id.)  The EEOC also requested a list of current employees by name, race, sex, age,

job title, and work location.  (Id.)  On August 31, 2010, A'GACI responded.  (Dkt.

# 1, Ex. 8.)  Regarding the first request, A'GACI stated that between March 9,

2009 and September 18, 2009 (the time during which Daiss was employed), it

received over 7,000 employment applications.  A'GACI stated that producing

application records from January 1, 2008 to August 21, 2010 would be impossible,

but that even if A'GACI had such information available, the request was overbroad

and harassing.  (Id.)  With respect to the second request, A'GACI stated its

position that the request was overbroad and sought information not relevant to

Daiss's charge.  A'GACI provided other requested information, including Daiss's

email correspondence, a list of terminated employees and their genders, and a list of managerial employees hired by Daiss.  (Id.)

On January 14, 2011, the EEOC sent a third additional request for information in which it repeated the requests regarding job vacancies and current employee demographics.  (Dkt. # 1, Ex. 9.)  At that point, A'GACI retained its current counsel to assist with the dispute.  On April 1, 2011, the EEOC sent A'GACI a letter emphasizing the Commission's power to subpoena the requested information and reiterating the requests made in the January 14 letter.  (Dkt. # 1, Ex. 10.)  On April 15, 2011, A'GACI's counsel sent the EEOC a letter stating its position that the information requested was not relevant to Daiss's charge.  (Id.)

On May 12, 2011, the EEOC served A'GACI with Subpoena No: DA-11-10 ("the 2011 Subpoena") requesting production of the following information by May 23, 2011:

> REQUEST 1:
> For the time period January 1, 2008, through the present, provide a list of all job vacancies throughout the company listing the specific job title, the date of the vacancy, the location of the job vacancy (including city, state, and store name), the opening and closing dates of the vacancy, the name(s) and job title(s) of the individual(s) involved in the selection process, the name and job title of the selecting official, the name, race, sex, and age and/or date of birth of the individual who was selected for the vacancy.
>
> REQUEST 2:
> For each vacancy listed in your response to the above question, provide the following:
> a.  A copy of the specific vacancy announcement,

     b.  A copy of the job description,

     c.  An unsanitized copy of each resume/application received,

     d.  A list identifying the names of those individuals interviewed for the vacancy,

     e.  Any and all documents/notes regarding the interview held, if any, with each individual,

     f.  A copy of any questions asked of those interviewed,

     g.  The name, race, sex, age and/or date of birth of the individual who was selected for the vacancy,

     h.  The date the individual was selected for the vacancy and the start date,

     i.  A copy of the completed personnel action form reflecting the selectee's name and hire date,

     j.  The current status of the individual selected; if currently employed, give current job title, store name and location (if applicable); if no longer employed give the date of and reason for termination, and provide a copy of the termination document.

REQUEST 3:

     Provide a list of current employees by name, race, sex, age and/or date of birth, job title, work location (include city, state, and store name), full-time/part-time status and current home address and telephone number.

(Dkt. # 1, Ex. 1.)  On May 20, 2011, A'GACI filed a petition to modify or revoke the subpoena.  (Dkt. # 1, Ex. 12.)  A'GACI objected to the subpoena on two bases: first, the information requested was not relevant to Daiss's charge, and second, the information would be in many instances impossible to provide.  (Id.)

     After further conversation between the EEOC and A'GACI's counsel, A'GACI sent the EEOC a letter on September 20, 2011, stating that it does not request or maintain any information regarding applicants' age, race, or gender, but

does give applicants the option to volunteer that information.  A'GACI stated that the information is not linked to individual applicants, but is aggregated in applicant pool statistics.  (Dkt. # 1, Ex. 13.)  On November 7, 2011, the EEOC requested all of the data stored in A'GACI's online system.  (Dkt. # 1, Ex. 14.)  On November 21, 2011, A'GACI refused to produce the information, reiterating that it was not relevant to Daiss's charge.  (Dkt. # 1, Ex. 15.)

On December 13, 2012, the EEOC sent A'GACI a spreadsheet of employees hired in 2009 and asked that A'GACI provide their dates of birth, race, and contact information.  (Dkt. # 1, Ex. 17.)  On December 28, 2012, A'GACI responded again that the requested information was not relevant to Daiss's charge. (Dkt. # 1, Ex. 18.)  On February 13, 2013, the EEOC sent A'GACI a letter explaining why it believed the requested information was relevant to the charge. (Dkt. # 1, Ex. 19.)  On March 2, 2013, the EEOC issued a second subpoena, No. DA–13–02 ("2013 Subpoena"), in which it subpoenaed the information requested in the December 13, 2012 letter.  (Dkt. # 5, Ex. S-17.)  On April 3, 2013, A'GACI filed a petition to modify or revoke the subpoena.[1]  (Dkt. # 5, Ex. S-18.)

---

[1] The EEOC has not yet ruled on A'GACI's petition to modify or revoke the 2013 Subpoena.  (Dkt. # 6 at 11.)  According to A'GACI, counsel for the EEOC confirmed via telephone conference that the Commission is no longer interested in pursuing the 2013 Subpoena.  (Id.)

On November 20, 2013, the EEOC denied A'GACI's petition to modify or revoke the 2011 Subpoena.  (Dkt. # 1, Ex. 21.)  On May 14, 2014, the EEOC filed the instant Application to Enforce the 2011 Subpoena.  (Dkt. # 1.)  On July 14, 2014, A'GACI filed a response in opposition.  (Dkt. # 6.)  On July 21, 2014, the EEOC filed a reply.  (Dkt. # 10.)  On November 11, 2014, A'GACI filed an advisory of new authority.  (Dkt. # 14.)  On November 19, 2014, the EEOC filed a response to A'GACI's advisory, (Dkt. # 15), and on November 26, 2014, A'GACI filed a reply (Dkt. # 16).[2]

## LEGAL STANDARD

Title VII of the Civil Rights Act of 1964 ("Title VII") prohibits employers from discriminating based on an individual's "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2.  Although the EEOC has primary responsibility for enforcing Title VII, "it does not possess plenary authority to demand information it considers relevant to all of its areas of jurisdiction."  E.E.O.C. v. S. Farm Bureau Cas. Ins. Co., 271 F.3d 209, 211 (5th Cir. 2001).

---

[2] The Court notes that in its response to A'GACI's advisory, the EEOC included several new arguments not raised in its application or reply brief.  Although a response to an advisory of new authority is not the appropriate vehicle to raise new arguments, the Court will consider the EEOC's arguments because A'GACI had an opportunity to respond to them in its reply brief.  See Vais Arms, Inc. v. Vais, 383 F.3d 287, 292 (5th Cir. 2004) (holding that a district court may consider a reply brief's new arguments and evidence as long as the opposing party is given an adequate opportunity to respond).  The Court therefore fully and carefully considers the advisory and both the response and reply briefs.

Rather, the requested information must be based on a valid charge filed either by or on behalf of an aggrieved individual, or by the EEOC itself. Id.; 42 U.S.C. § 2000e–5.  After a valid charge is filed, the EEOC has authority to obtain only "evidence of any person being investigated . . . that relates to unlawful employment practices . . . and is relevant to the charge under investigation."  Id. (citing 42 U.S.C. § 2000e–8(a)).  As a general rule, courts will enforce an administrative subpoena issued in aid of an investigation if: "(1) the subpoena is within the statutory authority of the agency; (2) the information sought is reasonably relevant to the inquiry; and (3) the demand is not unreasonably broad or burdensome."  United States v. Transocean Deepwater Drilling, Inc., 767 F.3d 485, 488 (5th Cir. 2014) (citing Burlington N. R. Co. v. Office of Inspector Gen., R.R. Ret. Bd., 983 F.2d 631, 638 (5th Cir. 1993)).

## DISCUSSION

The EEOC asks the Court to enforce its 2011 Subpoena, in which it sought information regarding the names and demographics (including race, sex, and age) of all individuals who applied for employment with A'GACI between January 1, 2008 and May 12, 2011.  (Dkt. # 1, Ex. 1.)  The EEOC argues that this information is relevant because the facts alleged in Daiss's discrimination charge and addendum raise the issue that A'GACI may have violated Title VII by maintaining recruiting and hiring practices that excluded minorities, males, and

8

pregnant women; by adopting a restrictive marketing image; and by adopting and

maintaining other policies which limited minority, male, and pregnant female

employment.  (Dkt. # 1 at 4.)  A'GACI responds that because Daiss did not allege

that he himself suffered race, sex, or age discrimination, the requested information

is irrelevant and beyond the scope of information the EEOC is entitled to receive.

(Dkt. # 6 at 21.)  A'GACI further argues that whether or not A'GACI actually

discriminates in its hiring practices is irrelevant to Daiss's only charge of

retaliation.  (Id. at 22.)

I.      Limitations on EEOC Jurisdiction

        The Court first addresses whether the 2011 Subpoena is within the

EEOC's statutory authority.  See Transocean, 767 F.3d at 488.  As stated above, a

charge of discrimination may be filed "by or on behalf of a person claiming to be

aggrieved" or by the EEOC itself.  42 U.S.C. § 2000e–5.  After a formal charge has

been filed, the EEOC has the right to access "any evidence . . . that relates to

unlawful employment practices . . . and is relevant to the charge under

investigation."  Id. § 2000e–8.

        The Court finds that Daiss is clearly an "aggrieved party" with respect

to his retaliation claim and that the EEOC consequently has the right to access any

evidence relating to the retaliation claim.  However, the EEOC seeks to expand the

scope of its investigation and obtain evidence relating to other types of

discrimination mentioned in the charge and addendum, but not personally suffered

by Daiss.  (See Dkt. # 1 at 15 (stating that the EEOC issued the 2011 Subpoena

"because it will enable the Commission to determine if applicants for employment

at A'GACI were subjected to unlawful hiring practices, and whether A'GACI

violated Title VII . . . by maintaining recruiting and hiring practices that excluded

minorities, males, and pregnant women and adopting a restrictive marketing image,

and other policies which limited minority, male, and pregnant female employment

opportunities").)

As A'GACI notes, district courts in other circuits have found that the

EEOC lacks jurisdiction to subpoena evidence regarding discrimination not

allegedly suffered by the charging party or an aggrieved party on whose behalf the

charge was brought.  Those courts have so held because under 42 U.S.C.

§ 2000e–5, a valid charge must be made by or on behalf of an aggrieved party.

A'GACI argues that because Daiss himself did not suffer from race, sex, or age

discrimination but only reported his belief that such discrimination was taking

place, the EEOC is not entitled to evidence regarding those types of discrimination.

(Dkt. # 6 at 21.)  In support of their position, A'GACI points to two out-of-circuit

district cases.  First, in E.E.O.C. v. McLane Co., Inc. ("McLane II"), the charging

party, Damiana Ochoa, filed a charge alleging that she had not been re-hired after

failing a physical capacity exam three times upon returning to work from maternity

leave, and consequently that she had been discriminated against based on her sex.
McLane II, No. CV–12–02469–PHX–GMS, 2012 WL 5868959, at *1 (D. Ariz.
Nov. 19, 2012).  Ochoa also stated the following: "The [physical capacity exam] is
given to all employees returning to work from a medical leave and all new hires,
regardless of job position.  I believe the test violates the Americans with
Disabilities Act of 1990, as amended."  Id.  Based on this charge, the EEOC
requested information from McLane including the names, genders, dates of birth,
social security numbers, and contact information for every person who took the test
nationwide, along with the reason the person took the test, the person's score, and
any adverse action taken by McLane as a result of those scores.  Id.

     The district court held that Ochoa's first charge—that she herself was
discriminated against on the basis of gender when she was not re-hired after failing
the test upon returning from maternity leave—gave the EEOC authority to
investigate potential gender discrimination.  Id. at *4.  However, the court held that
Ochoa's second charge—that she believed the test discriminated on the basis of
disability—did not give the EEOC jurisdiction to investigate potential ADA
violations.  Id.  The court stated that by statute, "the charge [must] be tied to a
specific aggrieved party."  Id. (citing 42 U.S.C. § 2000e–5(b)).  The court noted
that Ochoa's charge did not mention any instance of discrimination on the basis of
disability, Ochoa herself was not disabled, and Ochoa did not purport to bring the

ADA charge on behalf of another aggrieved party.  Id.  The court concluded, "[i]f anyone could file a charge—devoid of a specific aggrieved party—that asserts that such-and-such policy discriminates on any number of bases, the EEOC would have close to unlimited jurisdiction, and it would make virtually limitless any investigation the EEOC wished to undertake."  Id.

Second, in E.E.O.C. v. Homenurse, Inc., the charging party, Christie Carroll, filed a charge stating her belief that she had been terminated in retaliation for complaining to management about a discriminatory screening process in her employer's hiring policy.  Homenurse, No. 1:13–CV–02927–TWT–WEJ, 2013 WL 5779046, at *1 (N.D. Ga. Sept. 30, 2013).  Carroll also charged that she believed her employer's policies discriminated on the basis of disability, age, preexisting genetic conditions, and race.  Id.  Based on these allegations, the EEOC sought various records from all applicants for employment during the relevant time period.  Id. at *7.

The court stated that there was no dispute that Carroll was an "aggrieved party" within the meaning of the statutes and EEOC regulations with regard to her retaliation claim, and that the EEOC consequently had jurisdiction to investigate her retaliation claim.  Id. at *9.  With respect to her remaining allegations, however, the court found that Carroll was not an "aggrieved party" because her change did not mention any specific instance of discrimination on the

12

basis of disability, age, preexisting genetic conditions, or race.  Id. at *9–10.  The court also noted that Carroll was not a member of any of those protected classes, and that the charge did not purport to be brought on behalf of an aggrieved party. Id. at *10.  The court found that the charge made "blanket assertions" that Homenurse violated various federal statutes and that the court "cannot allow the EEOC to investigate a generalized charge of discrimination that is untethered to any aggrieved person."  Id.

The Court finds the reasoning in the cases cited by A'GACI persuasive, and agrees with the McLane II and Homenurse courts that under the plain language of 42 U.S.C. § 2000e–5, a charge of discrimination must be "tethered to an aggrieved party," which may be the charging party or a third party on whose behalf the charge is brought.  In this case, it is clear that Daiss himself did not suffer from race, sex, or age discrimination.  Like the charging parties in McLane II and Homenurse, Daiss is not a member of the relevant protected classes, and his charge does not allege that he personally suffered from race, sex, or age discrimination.  However, the EEOC urges the Court to find McLane II and Homenurse distinguishable because Daiss's addendum to his charge details a specific instance of racial discrimination during his tenure with A'GACI.  (Dkt. # 10 at 5–6.)  In the addendum, Daiss stated his belief that a qualified candidate was not hired for a managerial position based on her race.  In support of his

allegation, Daiss recounted a conversation he had with another senior employee at
A'GACI regarding the candidate's appearance.  (Dkt. # 1, Ex. 3 at 7.)

　　　　For the cited passage to give the EEOC authority to obtain evidence
regarding race discrimination, Daiss would have had to make the charge on the
candidate's behalf, but there is no evidence that this is the case.  The EEOC has
issued the following regulation regarding charges made by or on behalf of an
allegedly aggrieved person:

> A charge that any person has engaged in or is engaging in an unlawful
> employment practice within the meaning of title VII, the ADA, or
> GINA may be made by or on behalf of any person claiming to be
> aggrieved.  A charge on behalf of a person claiming to be aggrieved
> may be made by any person, agency, or organization.  The written
> charge need not identify by name the person on whose behalf it is
> made.  The person making the charge, however, must provide the
> Commission with the name, address and telephone number of the
> person on whose behalf the charge is made.  During the Commission
> investigation, Commission personnel shall verify the authorization of
> such charge by the person on whose behalf the charge is made.

29 C.F.R. § 1601.7(a).  Here, Daiss did not provide the EEOC with the candidate's
name, address, and telephone number, as required by the regulation.  Furthermore,
the charge form has a section titled "Cause of Discrimination Based On" and
provides boxes for race, color, sex, religion, age, retaliation, national origin,
disability, and other.  (Dkt. # 1, Ex. 3.)  Daiss checked only the box marked
"retaliation."  For these reasons, the Court concludes that Daiss filed the charge
solely on behalf of himself.

Even though the charge and the addendum reveal potential discriminatory practices, the EEOC does not have jurisdiction to investigate those practices absent a charge made by or on behalf of an aggrieved individual who alleges that he or she suffered from a specified type of discrimination.  As the McLane II and Homenurse courts noted, allowing the EEOC to subpoena information based on general allegations of discriminatory practices untethered to an aggrieved party would give the EEOC nearly unlimited jurisdiction.  The EEOC would have the power to impose burdensome discovery requests on employers based on highly generalized claims not grounded in specific instances of misconduct.  The EEOC's own regulation shows that a specific aggrieved party is vital to the charge and investigation process—an identifiable individual must be accountable for the allegations in the charge.  Because Daiss filed the charge only on behalf of himself, the EEOC is entitled only to obtain evidence regarding Daiss's charge of retaliation.

Furthermore, the Court is not persuaded by the cases the EEOC cites to support its position that the EEOC may properly investigate any potential discrimination revealed by the charge.  The EEOC first cites E.E.O.C. v. Huttig Sash & Door Co. for the proposition that the charge serves as a "jurisdictional springboard" allowing the EEOC "to investigate whether the employer is engaged in any discriminatory practices."  (Dkt. # 1 at 18.)  However, that case does not

concern the EEOC's subpoena powers.  Rather, the case explicitly states, "[t]he sole issue which we must decide is whether after the termination of a charging party's private suit the EEOC can bring suit predicated on, but not limited to, the same charge."  Huttig, 511 F.2d 453, 454 (5th Cir. 1975).

The EEOC next points the Court to Ga. Power Co. v. E.E.O.C., in which the charging party alleged that a potential employer rejected her application for employment on the basis of her race and sex.  412 F.2d 462, 464 (5th Cir. 1969).  In the course of its investigation, the EEOC requested a list of the names, races, and sexes of individuals employed by the company in the department the charging party had applied to work for.  Id. at 465.  The company argued that the only relevant data were the records pertaining to the charging party and the individual who was hired for the position instead.  Id. at 468.  The Fifth Circuit disagreed, holding:

> Discrimination on the basis of race or sex is class discrimination.  The EEOC cannot reasonably be expected to discern such discrimination by examining data relating to two individuals.  The contention that the EEOC should not have access to data concerning employment positions other than the one applied for by the charging party is without merit.  Comparative evaluation of job qualifications is obviously essential to the EEOC's task.  To limit the investigation to a single position would in many, if not most, instances severely restrict comparative study of the charged party's hiring practices.  Thus we think it clear that information concerning other positions is relevant to the investigation.

Id.  The Court finds this case clearly distinguishable.  In Georgia Power, the EEOC

requested information relevant to the types of discrimination allegedly suffered by

the charging party in order to investigate potentially discriminatory hiring practices

which the charging party alleged affected her personally.  This request is analogous

to the EEOC requesting information regarding A'GACI employees retaliated

against for complaining about discriminatory practices.  The Court does not read

this case to suggest that the EEOC is entitled to records that might reveal any type

of discrimination not alleged by the charging party.

        The EEOC also cites E.E.O.C. v. Alliance Residential Co., in which

the charging party alleged that she was terminated after taking leave under the

Family and Medical Leave Act because of a spinal impairment, in violation of the

Americans with Disabilities Act.  866 F. Supp. 2d 636, 638 (W.D. Tex. 2011).  The

EEOC requested information including the names, job titles, disability status,

social security numbers, contact information, and reasons for separation for

employees who were voluntarily resigned for not returning from a medical leave of

absence or who had exhausted leave time for medical reasons.  Id. at 639–40.  The

EEOC argued that such information would enable it to determine whether the

charging party and other employees were subjected to disability discrimination.  Id.

at 641.  The district court enforced the subpoena, stating that "the information

sought by the EEOC here pertains to the same type of discrimination alleged in the

charge.  [The charging party] alleged discrimination on the basis of disability, and the EEOC now seeks information regarding discrimination on the basis of disability."  Id. at 643.  The Court finds this case distinguishable on the same grounds as Georgia Power.  Here, the EEOC seeks information regarding discrimination of a different sort than that allegedly suffered by the charging party.  Daiss alleged only retaliation, but the EEOC seeks information pertaining to potential discrimination on the basis of race, sex, and age.  As explained above, the charging party or the aggrieved party on whose behalf the charge was brought must have suffered the type of discrimination being investigated.

II.     Relevance to Retaliation Charge

        Having found that the the EEOC has jurisdiction to investigate only Daiss's charge of retaliation, the Court turns to the question of whether the information requested in the 2011 Subpoena is relevant to Daiss's charge.  See Transocean, 767 F.3d at 488.  The EEOC has the right to access "any evidence . . . that relates to unlawful employment practices . . . and is relevant to the charge under investigation."  42 U.S.C. § 2000e–8.

        The Supreme Court has explained that the relevance limitation "is not especially constraining.  Since the enactment of Title VII, courts have generously construed the term 'relevant' and have afforded the Commission access to virtually any material that might cast light on the allegations against the employer."

E.E.O.C. v. Shell Oil Co., 466 U.S. 54, 68–69 (1984).  At the same time, however, the Court cautioned that "we must be careful not to . . . render[] that requirement a nullity."  Id. at 69.  As the Eleventh Circuit recently noted, "[t]he relevance that is necessary to support a subpoena for the investigation of an individual charge is relevance to the contested issues that must be decided to resolve that charge, not relevance to issues that my be contested when and if future charges are brought by others."  E.E.O.C. v. Royal Caribbean Cruises, Ltd., 771 F.3d 757, 761 (11th Cir. 2014).[3]

---

[3] In Royal Caribbean, the charging party alleged that Royal Caribbean violated the Americans with Disabilities Act when it refused to renew his employment contract after he was diagnosed with a medical condition.  771 F.3d 757, 759 (11th Cir. 2014).  The Eleventh Circuit found that "the record below makes clear that the disputed portions of the subpoena are aimed a discovering members of a potential class of employees or applicants who suffered from a pattern or practice of discrimination, rather than fleshing out [the charging party's] charge."  Id. at 760–61.  The court further found that the requested information was irrelevant to the investigation of the charge, especially because Royal Caribbean admitted that the charging party was terminated because of his medical condition.  Id. at 761.  Thus, statistical data was not necessary to determine whether Royal Caribbean's facially neutral explanation for the adverse employment decision was pretext for discrimination.  Id.

A'GACI argues that this case supports its position because it stands for the proposition that the EEOC is entitled only to information relevant to the contested issues that must be decided to resolve the individual charge of discrimination.  (Dkt. # 14 at 4.)  However, the Court agrees with the EEOC that this case is distinguishable because Royal Caribbean admitted that it terminated the charging party because of his medical condition.  To rebut a plaintiff's prima facie showing of discrimination, an employer must rebut the presumption of discrimination by articulating a legitimate, nondiscriminatory reason for the adverse employment action.  Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 345 (5th Cir. 2007).  If the employer meets its burden, the burden shifts back to the

Under Title VII, an employee engages in a protected activity if he or she opposes an unlawful employment practice. 42 U.S.C. § 2000e–3(a). To satisfy the opposition requirement, an employee need not prove that his or her employer's practices were actually unlawful, but only that he or she had a reasonable belief that the employer was engaged in unlawful employment practices. Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 348 (5th Cir. 2007) (citing Byers v. Dall. Morning News, 209 F.3d 419, 428 (5th Cir. 2000)). Thus, the Court agrees with A'GACI that whether or not A'GACI actually engaged in unlawful employment practices is irrelevant to Daiss's charge of retaliation. However, it does not automatically follow that the requested information is irrelevant to Daiss's charge. To make a prima facie showing of retaliation, Daiss would need to show that his belief that A'GACI was engaged in discriminatory practices was reasonable. Information regarding the demographics of A'GACI's applicant pool versus the demographics of its employees is relevant to support this

---

plaintiff to "present substantial evidence that the employer's reason was pretext for discrimination." Id. Because of Royal Caribbean's admission, the burden would not shift back to the charging party to present evidence that the Royal Caribbean's reason was pretext for discrimination. Therefore, evidence regarding other employees' medical conditions would be irrelevant to the case. Here, in contrast, a portion of the requested information would be relevant to Daiss's case, as explained infra. However, the reasoning in the case is still valuable in that it presents a persuasive argument that the relevance necessary to support a subpoena is relevance to the contested issues that must be decided to resolve that charge, not relevance to other issues that might be revealed by the charge. See Royal Caribbean, 771 F.3d at 761.

showing.  Thus, the Court finds that the EEOC is entitled to information regarding the races, sexes, and ages of individuals who applied for employment with A'GACI during Daiss's tenure, as well as the same information for those individuals who were hired during Daiss's tenure.

III.    Burden on Employer

Finally, the Court considers whether producing the relevant information imposes an undue burden on A'GACI.  See Transocean, 767 F.3d at 488.  As the district court in E.E.O.C. v. Alliance Residential Co. noted, few Fifth Circuit cases have addressed when an EEOC subpoena is overly burdensome.  See Alliance, 866 F. Supp. 2d at 644.  Other jurisdictions have held that an administrative subpoena presents an undue burden when "compliance would threaten the normal operation of a respondent's business."  Id. (citing E.E.O.C. v. United Air Lines, Inc., 287 F.3d 642, 653 (7th Cir. 2002)) (internal quotation marks omitted).

Here, A'GACI claims that it has not always collected information regarding its applicants' gender and race.  (Dkt. # 6 at 7.)  Instead, A'GACI states that beginning in September 2008, applicants were given the option to volunteer their gender, ethnicity, race, and veteran status.  (Id.)  A'GACI then collects that information to accumulate aggregate statistical data concerning its applicant pool, but does not link that data to any specific applicant.  (Id.)  The Court recognizes

that it cannot order A'GACI to produce information that does not exist.  Therefore, the Court orders A'GACI to produce aggregate statistical data regarding the racial makeup of its applicant pool during Daiss's tenure, between March 9, 2009 and September 17, 2009.  As explained above, the applicants' genders are also relevant to Daiss's charge.  A'GACI has already produced evidence regarding how many applications came from females versus males during Daiss's tenure.  (Dkt. # 1, Ex. 8.)  The Court is unable to discern whether A'GACI keeps records of its applicants' dates of birth, or whether A'GACI keeps records of its employees' races, sexes, and ages.  To the extent that these records exist, A'GACI is ordered to produce them for the duration of Daiss's employment.  The Court finds that doing so does not impose an undue burden on A'GACI.  See E.E.O.C. v. Alliance Res. Co., 866 F. Supp. 2d at 644 (finding that requiring employer to manually review personnel files and compile data was not unduly burdensome, although it would require hundreds of hours of work).

IV.   Availability of a Commissioner's Charge

The Court notes that the analysis above does not mean that the EEOC is powerless to investigate potential discriminatory hiring practices at A'GACI.  In E.E.O.C. v. Southern Farm Bureau Casualty Insurance Co., the Fifth Circuit found that requested information pertaining to sex discrimination was irrelevant where the charge specified racial discrimination only.  271 F.3d at 211.  However, the

Fifth Circuit noted that "[w]hen the EEOC discovered what it considered to be possible evidence of sex discrimination . . . [it] could have exercised its authority under 42 U.S.C. §§ 2000e–5(b), 2000e–6(e) to file a commissioner's charge alleging sex discrimination, thereby freeing the EEOC to demand information relevant to [potential sex discrimination]." Id.  Likewise, if the EEOC feels that it has uncovered evidence of race, sex, or age discrimination at A'GACI, it may file a commissioner's charge and request the information in the 2011 Subpoena pursuant to that charge.

CONCLUSION

For the reasons stated above, the Court hereby **GRANTS IN PART AND DENIES IN PART** the EEOC's Application to Enforce Administrative Subpoena.  (Dkt. # 1.)  The EEOC is entitled to information regarding the races, sexes, and ages of all applicants and employees hired during Daiss's tenure at A'GACI.

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, February 5, 2015.

_____
David Alan Ezra
Senior United States Distict Judge